UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| DELISA ANN ARVIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 6:19-CV-85-REW |
| v. ) | |
| ) | OPINION & ORDER |
| ANDREW SAUL, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Delisa Arvin appeals the Commissioner's denial of her application for Disability Insurance Benefits (DIB) under Title II. The parties filed dueling summary judgment motions. The Court, having considered the full record under governing law, **GRANTS** the Commissioner's motion (DE 14) and **DENIES** Arvin's motion (DE 12) because substantial evidence supports the findings resulting in the administrative ruling, and the decision rests on proper legal standards.

I.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Arvin is currently 54 years old. *See* R. at 476. She initially alleged disability beginning on November 30, 2012, but for purposes of the decision under review later claimed an amended onset date of September 20, 2016. *See id.*; R. at 307. Arvin applied

1

for DIB in August 2016. R. at 476.¹ The SSA denied her claim initially on January 23, 2017, R. at 383–84, and upon reconsideration on May 10, 2017. R. at 405–06. Following Arvin's June 2017 request, R. at 424, ALJ Susan Brock held a hearing on February 12, 2018. R. at 305–32. At the hearing, attorney Ronald Cox represented Arvin. *See* R. at 305. Claimant and impartial vocational expert William Ellis testified. R. at 309–31. ALJ Brock subsequently denied Arvin's claim on August 21, 2018. R. at 254–63. The Appeals Council denied review, and thus upheld the ALJ's decision, on January 28, 2019. R. at 1.

The ALJ made several particular findings in the required sequence.² She determined that Arvin did not engage in substantial gainful activity from her September 20, 2016, alleged onset date through December 31, 2017. R. at 256. The ALJ next determined that Arvin had multiple severe impairments. R. at 256–57. However, ALJ Brock then found that Arvin did "not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" R. at 257–58. Arvin makes no complaint to this point. The

---

¹ This was Arvin's second application. She previously applied for Title II benefits in July 2013. R. at 340. Following initial and reconsideration denials, Administrative Law Judge (ALJ) Tommye C. Mangus held a hearing in February 2015 and denied Arvin's claim on May 29, 2015. R. at 340, 352. After the Appeals Council's June 2016 review denial rendered Judge Mangus's decision final, R. at 361, Arvin sought federal court review. On April 27, 2017, Judge Hood, finding that substantial evidence supported ALJ Mangus's decision, granted summary judgment for the Commissioner. *See generally Arvin v. Berryhill*, No. 6:16-CV-160-JMH, 2017 WL 1536230 (E.D. Ky. Apr. 27, 2017). Arvin appealed no further. Claimant does not allege error in ALJ Brock's handling of the prior administrative ruling, and the Court finds the treatment fully consistent with applicable Circuit law. *See Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 932–34 (6th Cir. 2018); *Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 840–43 (6th Cir. 1997).

² The ALJ—as a preliminary predicate for a period of disability (per 42 U.S.C. § 416(i)(2)(C)) and disability benefits (per 42 U.S.C. § 423(a)(1)(A))—found that Arvin satisfied the §§ 416(i)(3) & 423(c)(1) insured-status requirements through December 31, 2017. R. at 254, 256.

2

ALJ further made a detailed residual functional capacity (RFC) finding. R. at 258–62. Although ALJ Brock found that Plaintiff was "unable to perform [her] past relevant work[,]" the ALJ determined that, given Arvin's particular characteristics and RFC, through December 31, 2017, "there were jobs that existed in significant numbers in the national economy that [Claimant] could have performed[.]" R. at 262–63. Based on these considerations, the ALJ ruled that Arvin was not under a disability from September 20, 2016, through the date she was last insured, December 31, 2017. *See* R. at 263. Dissatisfied with the result of the SSA's subsequent administrative process, which denied her relief, Arvin turned to federal court for review. The ALJ's RFC formulation and overall conclusion drew Arvin's criticisms, as discussed.

## II. ANALYSIS

### A. Standard of Review

The Court has carefully considered the ALJ's decision, the transcript of the administrative hearing, and the pertinent administrative record. The Court has turned every apt[3] sheet, primarily focusing on the portions of the record to which the parties specifically cite. *See* DE 10 (General Order 13-7), at ¶ 3(c) ("The parties shall provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments.").

Judicial review of an ALJ's decision to deny disability benefits is a limited and deferential inquiry into whether substantial evidence supports the denial's factual decisions and whether the ALJ properly applied relevant legal standards. *Blakley v. Comm'r of Soc.*

---

[3] That is, those records relevant to the particular issues Arvin presents for review.

*Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422 (6th Cir. 2008); *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Richardson v. Perales*, 91 S. Ct. 1420, 1427 (1971)); *see also* 42 U.S.C. § 405(g) (providing and defining judicial review for Social Security claims) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]").

Substantial evidence means "more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). The Court does not try the case *de novo*, resolve conflicts in the evidence, or assess questions of credibility. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). Similarly, the Court does not reverse findings of the Commissioner or the ALJ merely because the record contains evidence—even substantial evidence—to support a different conclusion. *Warner*, 375 F.3d at 390. Rather, the Court must affirm the agency decision if substantial evidence supports it, even if the Court might have decided the case differently if in the ALJ's shoes. *See Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

The ALJ, when determining disability, conducts a five-step analysis. *See Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994); 20 C.F.R. § 404.1520(a)(4); *id.* at § 416.920(a)(4).[4] At Step 1, the ALJ considers whether the claimant

---

[4] The Court interchangeably cites Parts 404 (directed to Title II claims) and 416 (addressing Title XVI claims), as the "standard of review for supplemental security income cases mirrors the standard applied in social security disability cases." *Bailey v. Sec'y of Health*

4

is performing substantial gainful activity. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(i). At Step 2, the ALJ determines whether one or more of the claimant's impairments are severe. *Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(ii). At Step 3, the ALJ analyzes whether the claimant's impairments, alone or in combination, meet or equal an entry in the Listing of Impairments. *Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(iii). At Step 4, the ALJ defines RFC and whether the claimant can perform past relevant work. *Preslar*, 14 F.3d at 1110; 20 C.F.R. § 416.920(a)(4)(iv). The inquiry at this stage (if applicable) is whether the claimant can still perform that type of work, not necessarily the specific past job. *See Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987). Finally, at Step 5, when the burden shifts to the Commissioner, if the claimant cannot perform past relevant work, the ALJ determines whether significant numbers of other jobs exist in the national economy that the claimant can perform, given the applicable RFC. *See Preslar*, 14 F.3d at 1110; 20 C.F.R. § 404.1520(a)(4); *id.* at § 416.920(a)(4)(iv). If the ALJ determines at any step that the claimant is not disabled, the analysis ends at that step. *Mowery v. Heckler*, 771 F.2d 966, 969 (6th Cir. 1985); 20 C.F.R. § 404.1520(a)(4); *id.* at § 416.920(a)(4).

When reviewing the ALJ's application of the legal standards, the Court gives deference to her interpretation of the law and reviews the decision for reasonableness and consistency with governing statutes. *Whiteside v. Sec'y of Health & Human Servs.*, 834

---

*& Human Servs.*, 922 F.2d 841, No. 90-3265, 1991 WL 310, at *3 (6th Cir. Jan. 3, 1991) (table); *see also Roby v. Comm'r of Soc. Sec.*, No. 12-10615, 2013 WL 451329, at *3 (E.D. Mich. Jan. 14, 2013) ("The standard for disability under both the DIB and SSI programs is virtually identical."), *adopted in* 2013 WL 450934 (E.D. Mich. Feb. 6, 2013); *Elliott v. Astrue*, No. 6:09-CV-069-KKC, 2010 WL 456783, at *4 (E.D. Ky. Feb. 3, 2010) ("[T]he same legal standards and sequential evaluation process is employed for making the disability determination regardless of whether an application is for DIB or SSI.").

F.2d 1289, 1292 (6th Cir. 1987). In a Social Security benefits case, the agency's construction of the statute should be followed "unless there are compelling indications that it is wrong." *Merz v. Sec'y of Health & Human Servs.*, 969 F.2d 201, 203 (6th Cir. 1992) (quoting *Whiteside*, 834 F.2d at 1292).

   B. <u>The ALJ did not reversibly err.</u>

  Arvin makes two arguments (the first features two sub-parts): (1) that ALJ Brock erroneously assessed Plaintiff's proof regarding (A) restricted functioning in her upper-extremities and (B) frequent restroom-use needs, DE 12-1 at 12–15; and, broadly, that substantial evidence does not support Judge Brock's non-disability determination *id.* at 15–16. The Court evaluates each, in turn.

*Upper Extremity Limits*

  Claimant expresses the first argument in various generic ways. She broadly contends, for example, that "[t]he ALJ clearly erred as a matter of law by assigning [Arvin] a medium residual functional capacity and not restricting her ability to use her arms in a more severe manner[,]" that the "medical evidence of record would allow for, at most, a light residual functional capacity with stringent limitations in her ability to use both her upper extremities[,]" and that she "testified very clearly about these limitations and the record of her medical treatment supports her testimony as to the problems she has doing these activities." DE 12-1 at 14.

  The Court rejects these generalized, conclusory arguments, unburdened by citation to the record or supporting authority. ALJ Brock affirmed that she gave "careful consideration" to "all the evidence," "all symptoms[,]" and the "entire record." R. at 254, 256, 259. The ALJ acknowledged Arvin's testimony regarding "problems with her left

6

shoulder." R. at 259. After circumspect review, and application of the requisite two-step process, Judge Brock thoroughly articulated her rationale and concluded that Plaintiff's complaints regarding her shoulder issues were "inconsistent with" and unsupported by "the limited treatment evidence[.]" R. at 260.

"First, [the ALJ] must consider whether there is an underlying medically determinable physical or mental impairment[ ] that could reasonably be expected to produce an individual's symptoms, such as pain. Second, once an underlying physical or mental impairment[ ] that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" SSR 16-3p, 2016 WL 1020935; *see* 20 C.F.R. § 404.1529. The ALJ performed this analysis. *See* R. at 260. Judge Brock found that Arvin had a rotator cuff tear in 2015, accounted for the impairment in formulating Claimant's RFC, and, ultimately, defensibly rejected Arvin's subjective claims of disabling shoulder pain as inconsistent with the objective medical evidence. *See* 20 C.F.R. § 404.1529(a) (A claimant's "statements about [ ] pain or other symptoms will not alone establish" disability.). The record amply supports the ALJ's conclusion. For instance, Claimant's August 2015 physical therapy showed "an overall increase in shoulder" range-of-movement. R. at 288. More importantly, a 2017 physical examination revealed "no significant limitations . . . in [Arvin's] upper" extremities, "strength [of] 5/5 in all extremities[,]" and no range-of-motion deficits in Claimant's shoulders. R. at 916–17. Plaintiff does not grapple with this (or any other) proof or challenge the specifics of Judge Brock's reasoning. *Cf. Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) ("On judicial

review, an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'" (quoting 42 U.S.C. § 405(g)).

Arvin's argument regarding nonspecific "medical evidence of record" obviously earns no relief; the Court could not reverse the ALJ's decision based on hypothetically contradictory proof Claimant herself declined to identify.[5] Vaguely alluding to "the record of her medical treatment," sans citation (or even method of intelligible identification), is also deficient. DE 12-1 at 14. Claimant gets no remedy on sub-argument one. *See, e.g.*, *United States v. Crumpton*, 824 F.3d 593, 619 n.7 (6th Cir. 2016); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997); *Howard v. City of Girard*, 346 F. App'x 49, 52 (6th Cir. 2009) (citing cases); *United States v. Reed*, 167 F.3d 984, 993 (6th Cir. 1999); *Buziashvili v. Inman*, 106 F.3d 709, 719 (6th Cir. 1997).[6]

---

[5] This theory also ignores the applicable standard. *See Blakley*, 581 F.3d at 406 ("[I]f substantial evidence supports the ALJ's decision, this Court defers to that finding '**even if there is substantial evidence in the record that would have supported an opposite conclusion.**'" (emphasis added & citation omitted)).

[6] Arvin complains without differentiation about the ALJ's treatment of both extremities. The ALJ carefully accounted for the left shoulder and the right pinky with variations in the RFC. As to the finger, the ALJ reviewed the testimony, medical records, and therapy reports. R. at 259, 261. Because of the particular injury and the treatment progress, the ALJ rationally placed a manipulative limit on the right side but otherwise found no basis for additional restrictions. With no particular contrary argument presented, and finding the ALJ's thinking reasonable and substantially supported, the Court sees no reason to intervene on that issue. R. at 1000–01 (1/23/18, indicating that x-rays showed "good[,]" as well as "improved" alignment and that Arvin was "doing well"), 1001 (2/21/18, "alignment is normal" and fracture is "[s]table"), 1008 (2/15/18: "The potential for continued improvement with skilled therapeutic intervention is good."), 1015 ("Goal Achieved Feb 08, 2018[:] Decreasing Pain[ ] to 2/10.").

*IBS & Other Restroom Difficulties*

Next, Arvin contends that the ALJ "failed to address [her] uncontradicted testimony [concerning] difficulties with using the bathroom and her need to take unscheduled breaks for this issue." DE 12-1 at 14. Not true. ALJ Stanley, relying on state expert input, R. at 400–01 (Physical RFC Assessment – P. Saranga, M.D.), explicitly accounted for Claimant's "alleged stomach pain by limiting her to medium level work and limiting her stooping." *See* R. at 260 (noting that the "limited treatment evidence does not support any additional limitations"). Arvin's baseless contrary assertions—*see* DE 12-1 at 14 (claiming also that the ALJ "failed to give any type of restrictions for these problems in the [ ] RFC"); *id.* at 14–15 (arguing, again, a "failure to address these severe impairments")—are no basis for relief. Plaintiff's broad reference to nonspecific "medical evidence [regarding] her kidney and stomach" fares no better. DE 12-1 at 14. Claimant cites no proof. And, the ALJ addressed the "very limited" treatment evidence from the period of claimed disability regarding Arvin's stomach and restroom troubles. R. at 260. The Court, as above, rejects this cursory, unsupported argument. *Cf. United States v. Bradley*, 917 F.3d 493, 509 (6th Cir. 2019) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal citations and quotation marks omitted)).

Again, under the relevant regs, a claimant's "statements about [ ] pain or other symptoms will not alone establish" disability. 20 C.F.R. § 404.1529(a). An "ALJ's determinations of credibility" are due "great weight and deference particularly since the ALJ has the opportunity, which [the Court does] not," to observe "a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). The

9

record reveals (and Plaintiff identifies) no error in the ALJ's assessment of Arvin's testimony, quite the opposite. Claimant testified that she could do housework for as much as "a couple of hours" at a time, that she continues to do grocery shopping, and that she sometimes goes out to dinner. R. at 322, 323, 325. Arvin had not been to a doctor specifically for her IBS or kidney issues, in "a couple years[.]" R. at 313. In March of 2017, Arvin sought treatment for gastroenteritis and complained of "some" diarrhea, for a duration of "1 day[,]" and sought phenergan for that ailment (the same medicine she averred taking for her purportedly disabling stomach issues, R. at 313). R. at 920. The provider's "objective" assessment notes indicate that Claimant's stomach issues "would resolve with time[.]" R. at 921–22. Both Plaintiff's minimal treatment (really, the records of treatment actually pursued are not just limited, but inconsistent with Arvin's claims) and persisting activities of daily living are logical and recognized bases for discounting claims of disabling limitation; here, they substantially support the ALJ's calculus. *See McKenzie v. Comm'r, Soc. Sec. Admin.*, 215 F.3d 1327 (table) (6th Cir. 2000) ("Plaintiff's complaints of disabling pain are undermined by his non aggressive treatment."); 20 C.F.R. § 404.1529(c)(3) (authorizing consideration of "daily activities" and "treatment"); *cf. Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 631 (6th Cir. 2016) (Claimant "received only conservative treatment for her ailments, a fact which constitutes a 'good reason' for discounting a treating source opinion.").

Judge Brock was obviously aware of Arvin's IBS, which she labeled a severe impairment, and crafted the RFC with the syndrome as a consideration.[7] The ALJ—in thoroughly explaining her RFC analysis—found Claimant's testimony, for specific and detailed reasons, only partially "consistent with the medical evidence and other evidence in the record[.]" R. at 258–62. Arvin's indefinite allegations of contrary proof—again disregarding the applicable standard, *Blakley*, 581 F.3d at 406—cast no legitimate doubt on Judge Brock's careful treatment. *See Brenay v. Schartow*, 709 F. App'x 331, 336 (6th Cir. 2017) ("It is not enough for a party to mention a possible argument in the most skeletal way and leave the court to put flesh on its bones." (internal citations and quotation marks are omitted)).

*Substantial Evidence*

Arvin's final argument merely recites the substantial evidence standard, identifies Claimant's impairments, and baldly asserts that the full record shows that the ALJ got it wrong. *See* DE 12-1 at 15–16. The theory features even less detail and specificity than the preceding amorphous, generic contentions; it patently warrants no remedy. The ALJ found that Plaintiff had each of the impairments (severe or non-severe) for which Arvin now contends the "objective medical evidence unequivocally documents that [she] suffers from[.]" *Compare* DE 12-1 at 16, *with* R. at 256. Thus, it is unclear what Claimant's point, if any, is on this topic. The balance of the argument, other than summaries of caselaw without effort to connect the reasoning to Arvin's circumstances, consists of four sentences

---

[7] The ALJ likewise detailed a record-supported rationale for designating Arvin's kidney disease non-severe (a conclusion not obviously disputed here). *See* R. at 257; *see also* R. at 921 (Claimant, in March 2017, advising Physician's Assistant William Miller that she "quit going to see" her kidney doctor "a few years ago"); R. at 922 (PA Miller reporting, as to Arvin's kidney disease, "she seems fine").

11

stating three conclusions: (1) that the ALJ's non-disability determination "is not supported by substantial evidence" (Plaintiff repeats this claim two paragraphs later); (2) that "the record . . . considered in its entirety" shows that the combined effects of Arvin's impairments render her, essentially, disabled (the Court sees no meaningful difference between claiming Arvin is unable to perform most "sedentary work on a regular and sustained basis" and flatly averring she is disabled); and (3) that "the ALJ should have properly evaluated the medical conditions[.]"[8] DE 12-1 at 15–16.

These allegations really boil down to the same unhelpful point (one the fact of this appeal already supplied): Arvin believes the ALJ got it wrong. Practically, there is no material difference between Plaintiff's argument and a one sentence motion arguing that the Court should reverse the ALJ because her decision is not supported by substantial evidence. Plaintiff's detail-free iteration of this basic claim adds no substantive content and earns no relief. Confronting a similarly general contention, the Sixth Circuit reasoned:

> This challenge warrants little discussion, as [claimant] has made little effort to develop this argument in her brief on appeal, or to identify any specific aspects of the Commissioner's determination that lack support in the record. Under these circumstances, we decline to formulate arguments on [claimant's] behalf, or to undertake an open-ended review of the entirety of the administrative record to determine (i) whether it might contain evidence that arguably is inconsistent with the Commissioner's decision, and (ii) if so, whether the Commissioner sufficiently accounted for this evidence. Rather, we limit our consideration to the particular points that [claimant] appears to raise in her brief on appeal.

---

[8] To the extent Arvin, with this last claim, intended an assertion of legal error, it fails. The "quantum of deference due [to the SSA's statutory interpretation and application] is not negligible: 'The construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong.'" *Whiteside*, 834 F.2d at 1292 (quoting *Red Lion Broadcasting Co. v. Federal Communications Comm'n*, 89 S. Ct. 1794, 1802 (1969)). Claimant's unadorned contention provides no signal (compelling or otherwise) of error.

*Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 490–91 (6th Cir. 2006). The Court has addressed Arvin's marginally particularized (at least, in comparison to the indiscriminate final volley) assertions and rejected them for the reasons discussed *supra*. Claimant's sweeping suggestion of error seems to request a wholesale comparative analysis between the ALJ's decision and the full record; an ask inconsistent with the Court's reviewing role. *Jordan*, 548 F.3d at 422 (The Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." (citation and quotation marks omitted)). It is not the Court's job to mine the record for proof of disability. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997) ("Claimant has the ultimate burden of proving the existence of a disability."); *cf. Brenay*, 709 F. App'x at 337 (Judges "are not like pigs, hunting for truffles buried in briefs" (citation and quotation marks omitted)).

Arvin's final argument treats the ALJ's decision as a mere starting point. It is not. The Court does not review the Commissioner's final decision *de novo* but defers to the agency's ruling when reasonable minds could differ. *See Blakley*, 581 F.3d at 405–06. Put differently, "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which [administrative] decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). Claimant—though offering much untargeted rhetoric—fails to stake out a proof-

13

based alternative path; Arvin, perforce, does not demonstrate that ALJ Brock's ruling fell outside the record-supported parameters.[9]

### III. CONCLUSION

For all these reasons, the Court **GRANTS** DE 14 and **DENIES** DE 12. The Court will enter a separate Judgment.

This the 22nd day of April, 2020.

Signed By:
Robert E. Wier   REW
United States District Judge

---

[9] One final note. Arvin does, as an introduction, summarize certain portions of her medical history. DE 12 at 2–12. Yet, Plaintiff ultimately fails to explain how the recitation supports any of her arguments or shows error in the ALJ's review. *See id.* at 12–16. Claimant's argument (though including a single block quotation of Judge Brock's RFC finding) does not cite a single record page. *See id.* In short, Arvin's brief fails to draw a single discrete connection between specific record proof and any alleged ground for relief. Plaintiff's ramified approach—providing no scrutable method for discerning what portions of the medical history, if any, Arvin believes demonstrate ALJ error—robs the factual thumbnails of any persuasive force. In any event—and though rejecting Plaintiff's conclusory assertions did not require or justify it—the Court has reviewed the medical evidence concerning the shoulder, stomach, and kidney ailments central to Claimant's assertions of error and finds, for the reasons already detailed, substantial support for ALJ Brock's specifically disputed factual determinations.

The ALJ clearly honed in on the claimed period of disability, with a revised onset of September 2016. Thus, the overall history mattered, but the ALJ scrutinized, properly, Arvin's status between onset and the end of her insured status (December 2017). The medical proof, as the ALJ repeatedly observed, is thin for this crucial stretch. The Court has plumbed the record as well and finds the ALJ's treatment well-supported.